AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: JACQUELYN HUTZELL  
Digitally signed by JACQUELYN HUTZELL  
Date: 2021.07.19 08:05:29 -05'00'

7/19/21

# UNITED STATES DISTRICT COURT
for the  
Western District of Oklahoma

In the Matter of the Search of  
*(Briefly describe the property to be searched or identify the person by name and address)*

A Black Apple IPhone Xr, Model: MT3K2LL/A, Serial: DX3CCRTRKXKN, Utilizing Phone Number 918-285-9801, that is stored in the FBI Oklahoma Office, 3301 W Memorial, Oklahoma City, OK 73156

)  
)  
)  Case No. MJ-21- 425 -AMG
)  
)  
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___ Western ___ District of ___ Oklahoma ___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Interstate Communications with Threat to Kidnap or Injure |
| 18 U.S.C. § 2261A(1) | Interstate Stalking |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Timothy Curtis Doyle, Special Agent, FBI  
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 19, 2021

City and state: Oklahoma City, Oklahoma

*Judge's signature*

Amanda Maxfield Green  
*Printed name and title*

1. IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **A BLACK APPLE IPHONE Xr, MODEL: MT3K2LL/A, SERIAL: DX3CCRTRKXKN, UTILIZING PHONE NUMBER 918-285-9801,** THAT IS STORED IN THE **FBI OKLAHOMA CITY OFFICE, 3301 W MEMORIAL, OKLAHOMA CITY, OKLAHOMA 73156** | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Timothy Curtis Doyle, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— a **BLACK APPLE IPHONE Xr, MODEL: MT3K2LL/A, SERIAL: DX3CCRTRKXKN, UTILIZING PHONE NUMBER 918-285-9801 (the "Cellular Device")**, as described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

### AGENT BACKGROUND

I am a Special Agent of the United States Federal Bureau of Investigation ("FBI") within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make

arrests for, offenses enumerated in 18 U.S.C. § 875 and 18 U.S.C. 2261A, among others, including Interstate Communications with a Threat to Kidnap or Injure and Interstate Stalking.

I have been a Special Agent of the FBI since September 20, 2015. I received four months of training in criminal investigations and related legal matters at the FBI Training Academy in Quantico, Virginia. Upon completion of training at the FBI Training Academy until August 2019, I was assigned to the San Antonio Division, Laredo Resident Agency. I am currently assigned to the Oklahoma City Division, Stillwater Resident Agency. Prior to employment with the Federal Bureau of Investigation I was a certified Peace Officer with the City of Enid, in the State of Oklahoma, from April 4, 2005, until September 10, 2015.

Through training and experience, I have become familiar with and used all normal methods of investigation, including, but not limited to, visual surveillance, witness interviews, search and arrest warrants, confidential human sources, pen registers, undercover agents, and court authorized wiretaps.

The statements contained in this Affidavit are based on my personal investigative efforts, information provided by other Special Agents of the FBI, on the analysis of information obtained from surveillance, information from confidential sources, and other reports and documents. It is also based on my training and experience as a Special Agent of the FBI and a Peace Officer in the State of Oklahoma. Except where otherwise noted, the information set forth in this Affidavit has been provided to me directly or indirectly by Special Agents of the FBI or other law enforcement officers. Unless otherwise noted,

wherever in this Affidavit I assert a statement was made, the information was provided by another law enforcement officer (who may have either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations, but rather observations provided directly or indirectly by other law enforcement officers who have conducted such surveillance.

I participated in this investigation through case briefing, the review of documents, and analysis of information obtained from other agents. Since this Affidavit is being submitted for the limited purposes of establishing Probable Cause for a search of the aforementioned electronic device, I have not included each and every fact known concerning this investigation. I have set forth only the facts which I believe necessary to establish the Probable Cause for an order authorizing a search warrant for the aforementioned Cellular Device.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line"

3

telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable

4

storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most

5

PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on my training, experience, and open source research, I know that the Cellular Device taken from Barry Christopher Hutton and currently in the custody and control of the FBI Oklahoma City Office, has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, amongst other things. In my training and experience, examining data stored on devices of

this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and what they used it for.

## STATUTORY AUTHORITY

This investigation concerns alleged violations of 18 U.S.C. § 875(c), relating to Interstate Communications with a Threat to Kidnap or Injure, and 18 U.S.C. § 2261A(1), relating to Interstate Stalking. Section 875(c) prohibits the transmission in interstate or foreign commerce of any communication threatening to kidnap or injure another person. Section 2261A(1) prohibits a person from traveling in interstate or foreign commerce "with the intent to kill, injure, harass, [or] intimidate" another person where such travel or conduct "(A) places that person in reasonable fear of the death of, or serious bodily injury to—(i) that person; (ii) an immediate family member [] of that person, (iii) a spouse or intimate partner of that person . . ." or "(B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) . . . ."

## PROBABLE CAUSE

As will be shown below, there is probable cause to believe that Barry Christopher Hutton committed the crimes of Interstate Communications with a Threat to Kidnap or Injure, in violation of 18 U.S.C. § 875(c), and Interstate Stalking in violation of 18 U.S.C. § 2261A(1).

HUTTON'S harassment of his wife L.H. predates this year. On November 25, 2020, at approximately 1914 hours, L.H. advised Cushing Police Department (CPD) officers that she pulled into her driveway in Cushing, Oklahoma, and that her husband, HUTTON, had

pulled into the driveway and intentionally hit her car with his truck. HUTTON exited his vehicle, approached L.H.'s vehicle, and attempted to physically remove L.H. from her vehicle by pulling on her arm. L.H. advised that during the altercation HUTTON bit her arm. Indeed, officers observed a blood-pooled, already bruised bite mark on L.H's upper arm. L.H. advised that during the altercation she told HUTTON she was going to contact the police and had her phone in her hand. HUTTON then grabbed the phone out of her hand and left with it, preventing L.H. from contacting police.

Aside from the statements of L.H., CPD officers also interviewed a neighbor who witnessed HUTTON ram his pickup into the rear of L.H.'s vehicle while L.H. was in it. The neighbor also witnessed HUTTON exit his vehicle, approach L.H., and grab her by the arm. It was the neighbor that then contacted 911.

HUTTON was then arrested for domestic violence charges at approximately 2035 hours. During his arrest, he became irate and advised CPD officers he wanted them to shoot him. Upon arrival at the jail HUTTON was placed into the mental health cell and told officers if he had still been at the residence he would have gotten his shotgun and pointed it at the police in order for them to shoot him.

Despite his arrest in November 2020, HUTTON's harassment of L.H. continued. On June 14, 2021, L.H. reported HUTTON had been calling her cell phone and had made multiple new threats to her. L.H. advised HUTTON was upset she would not talk to him and he called her place of employment from his cellular phone multiple times. L.H. said HUTTON made multiple threats to kill himself and when her place of employment blocked HUTTON's number, HUTTON started calling L.H.'s daughter's phone. L.H. said they

8

have been separated since November 2020 and HUTTON has not lived in Cushing since March 2021, when he was released from the Payne County Jail after his prior domestic violence arrest. L.H. reported on June 14, 2021, that HUTTON called L.H., from his cellular phone, and threatened he was going to get an AR-15, kill L.H. and her family, and then take his own life. L.H. reported this also happened a few weeks prior, but at that time she was able to convince HUTTON to get mental health help in Tulsa. L.H. said she was scared HUTTON was going to hurt her or her family and specifically advised that she was in fear for her life. L.H. reported she has told HUTTON several times she wants a divorce, but HUTTON told her that it would not happen.

HUTTON also called and spoke with several officers at CPD on June 14, 2021, and confirmed some of his threats. HUTTON—using the Cellular Device—called CPD from phone number at three separate times (1308, 2008, and 2029 hours). In the first call HUTTON identified himself as Mr. Hutton. In the second call he stated, "This is Barry Hutton," and in the third call the officer asked if this was Barry and he stated "yea." Those calls were recorded, and HUTTON made the following statements, among others, to CPD:

- "I'm coming to see my wife no matter what" (said multiple times);
- "I'm coming to see her one way or another even if you have to kill me;"
- "I'm 2000 miles away but I'm coming home and you all better be ready;"
- "Either her dad is going to have to shoot me or you guys are going to have to;"
- "Her dad doesn't like me;"
- "I have a depression problem;"
- "I called her daughter;"

- "I called [employer of L.H.];"

- "No hell on this earth that you can put me through that I haven't already been through so you all better get ready;"

- "I'll make you a redneck promise, I'm coming" (then hung up phone);

- "As soon as I get home I'm gonna get my pickup truck;"

- "I've put something in there for protection;"

- "I bought it for $700 with three extended clips;"

- "I'm gonna make y'all kill me;"

- "I tell you right now I'm coming;"

- "Last week I went and bought me some protection, it's under my truck;"

- "I'm telling you right now, I got an AR-15 and three extended clips;"

- "I'm gonna buy another phone so you can't track me;"

- "I'm at my wits end;"

- "I'm asking for help;"

- "I ain't scared of the cops, you bleed just like I do;"

- "I wanna talk to my wife;"

- "I'm calling her work and everything;" and

- "I called her work and they said they are calling you guys."

L.H. advised it is common for HUTTON to call her place of employment multiple times whenever L.H. doesn't answer HUTTON's calls. L.H. also showed CPD officers her phone recent call log, which showed HUTTON had called her cell phone, from the Cellular Device, 13 times within a 42-minute time frame on June 14, 2021. L.H. also provided an

10

internet screenshot that HUTTON sent her from the Cellular Device on June 14, 2021, of a flight itinerary showing a flight from Boston, Massachusetts, at 1451 hours and landing in Tulsa, Oklahoma, at 2010 hours. Based on my training, experience, and knowledge of this investigation, I believe that HUTTON sent this itinerary to intimidate L.H. into believing he was purchasing tickets to come back to Oklahoma to carry out his threats. My investigation has shown that rather than flying to Tulsa, HUTTON took commercial flights from Boston, to Denver, then to Spokane, Washington, after which he drove south (towards Oklahoma) and was arrested on June 16, 2021, in Moscow, Idaho, on state warrants from Oklahoma and Idaho. He was subsequently transferred to Sandpoint, Idaho, on a traffic warrant. HUTTON had the Cellular Device in his possession when he was arrested.

Based on the above listed information and facts, I believe information contained in this cell phone will further the investigation and request a search warrant be issued for the above-listed phone, which is in the custody and control of the FBI Oklahoma City Office. This phone is to be seized for the purpose of conducting a forensic examination to recover and find evidence used in the commission of a crime, pursuant to 18 U.S.C. § 875 and 18 U.S.C. § 2261A.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

*Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Cellular Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Cellular Device because:

Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a

computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

*Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

*Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Cellular Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
TIMOTHY CURTIS DOYLE,
FBI Special Agent

Subscribed and sworn to before me
On July 19, 2021.

_____
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

This warrant authorizes the forensic examination of a Black Apple iPhone Xr, Model: MT3K2LL/A, Serial: DX3CCRTRKXKN, utilizing phone number (918) 285-9801, that is stored at the FBI Oklahoma City Office, located at 3301 W. Memorial, Oklahoma City, Oklahoma 73156 (the "Cellular Device") for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the Cellular Device described in Attachment A that relate to violations of 18 U.S.C. § 875 and 18 U.S.C. § 2261A and involve Barry Christopher Hutton, including:

    a. records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show address book information, including all stored or saved telephone numbers;

    b. records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from the Cellular Device and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

    c. records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device;

    d. data, records, documents, programs, applications or materials relating to interstate travel and interstate communication and threats;

    e. audio recordings, pictures, video recordings or still captured images on phone memory cards, or other storage; and

  f. Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations.

2. Evidence of who used, owned, or controlled the Cellular Device at the time the things described in this warrant were created, edited, or deleted, including:

  a. logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

  b. records of or information about Internet Protocol addresses used by the Cellular Device; and

  c. records of or information about the Cellular Device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3. Evidence of the presence or absence of software that would allow others to control the Cellular Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

4. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Cellular Device.

5. Evidence of the times the Cellular Device was used.

6. Passwords, encryption keys, and other access devices that may be necessary to access the Cellular Device.

7. Applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the Cellular Device or to conduct a forensic examination of it.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review